IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHNNY GUEST,

        Plaintiff,

     v.

PROVIDENT FUNDING
ASSOCIATES, *et al.*,

        Defendants.

:

:

:

:

Case No. 3:12-cv-224

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING IN PART AND SUSTAINING IN
PART DEFENDANT MATTHEW PINGETON'S MOTION TO DISMISS
(DOC. #18); DISMISSING COUNT 3 OF COMPLAINT WITH
PREJUDICE

---

After being named as a defendant in a foreclosure action filed in Florida,

Plaintiff Johnny Guest filed suit against Provident Funding Associates, L.P.

("Provident"), Experian Information Solutions, Inc., Trans Union LLC, and

Massachusetts attorney Matthew Pingeton, alleging violations of the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, and a state law claim of intentional

infliction of emotional distress.

This matter is currently before the Court on Defendant Matthew Pingeton's

motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and

12(b)(6). Doc. #18. He argues that this Court lacks personal jurisdiction over him.

In the alternative, he argues that Count 3 of the Complaint – the claim for

intentional infliction of emotional distress – fails to state a claim upon which relief may be granted.

## I.    Background and Procedural History

In March of 2009, Wells Fargo Bank filed a foreclosure action in Florida against Dayton resident Johnny Guest.  According to the Complaint, Guest had borrowed $378,000 from Wells Fargo to purchase real property in Miami, Florida, granted Wells Fargo a security interest in the property, and later defaulted on the loan.  Guest maintains that Wells Fargo sued the wrong person.  He allegedly works two jobs just to make ends meet, has never even been to Florida, and owns no real property there.

In the foreclosure action, Guest filed two affidavits stating that he was not obligated on the underlying debt and had not executed the mortgage in question, but to no avail.  On December 6, 2010, Provident Funding Associates, L.P., purchased the loan from Wells Fargo, and reported Guest's alleged outstanding debt to various credit reporting agencies, including Experian and Trans Union.  On June 2, 2011, Provident was substituted as a plaintiff in the foreclosure action but, on June 20, 2011, it dismissed the foreclosure suit without prejudice.

On November 15, 2011, Provident's attorney, Matthew Pingeton, whose office is in Massachusetts but who is also licensed to practice law in Florida, re-filed the foreclosure action against Guest in Florida.  A process server served a copy of the Summons and Complaint on Guest in Dayton on December 20, 2011.  On January 5, 2012, Guest again filed an affidavit stating that the debt was not

his and that he was not the mortgagor. He sent a copy of the affidavit, along with a letter, to Provident and to Pingeton.

On February 29, 2012, Pingeton contacted Guest's counsel in Dayton by telephone. Although Guest's counsel confirmed that his client was not the mortgagor or the borrower on the loan in question, Provident did not dismiss the suit, and allegedly continued to report false information to the credit reporting agencies. Guest's efforts to dispute the debt have proven unsuccessful. As a result, he has been denied credit, has had his credit card limit reduced, and has been forced to enroll in a credit protection plan. He maintains that this has caused him significant frustration, embarrassment, stress, loss of sleep, and an upset stomach.

On July 10, 2012, Guest filed suit against Provident, Experian, Trans Union, and Pingeton, alleging violations of the FDCPA, the FCRA, and intentional infliction of emotional distress. By stipulation of the parties, all claims against Provident, Experian and Trans Union have been dismissed. All that remains are the two claims that Guest brought against Pingeton -- one for alleged violations of the FDCPA, and another for intentional infliction of emotional distress.

Guest maintains that Pingeton violated the FDCPA by: (1) engaging in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d; (2) using "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e(8), by communicating credit

3

information he knew or should have known was false; (3) using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f; and (4) failing to respond to Guest's written dispute of the loan and continuing to litigate the second foreclosure action, 15 U.S.C. § 1692g(b).

Pingeton has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. In the alternative, he has moved to dismiss the intentional infliction of emotional distress claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.     Personal Jurisdiction

### A.     Relevant Law

Guest bears the burden of demonstrating that this Court has personal jurisdiction over Pingeton. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

In deciding a motion to dismiss for lack of personal jurisdiction, the Court may decide the motion on the basis of affidavits alone, permit discovery in aid of deciding the motion, or conduct an evidentiary hearing to resolve factual disputes.

4

*See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).[1]
If no hearing is held, the plaintiff can withstand a motion to dismiss by establishing
a prima facie case of personal jurisdiction. This burden is "relatively slight and the
district court must consider the pleadings and affidavits in the light most favorable
to the plaintiff." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th
Cir. 1988) (internal quotation omitted). The plaintiff can make a prima facie
showing of personal jurisdiction by "establishing with reasonable particularity
sufficient contacts between [the defendant] and the forum state to support
jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th
Cir. 2002) (*quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*,
819 F.2d 434, 437 (3d Cir. 1987)).

Generally, in order for a court to exercise personal jurisdiction over an out-of-
state defendant, that defendant must be amenable to service of process under
Federal Rule of Civil Procedure 4(k). Rule 4(k) typically allows service of process
to reach any person "who is subject to the jurisdiction of a court of general
jurisdiction in the state where the district court is located." Fed. R. Civ. P.
4(k)(1)(A). Accordingly, whether personal jurisdiction exists depends on the law of
the state in which the district court sits. *American Greetings*, 839 F.2d at 1167.

---

[1] It is axiomatic that the court may consider affidavits submitted in connection
with a motion to dismiss for lack of personal jurisdiction without converting the
motion into a motion for summary judgment.

Ohio law therefore governs the question of whether this Court may exercise personal jurisdiction over Pingeton.

A two-pronged inquiry governs the determination of whether a court may properly exercise personal jurisdiction over an out-of-state defendant. The court must first determine whether Ohio's "long-arm" statute, Ohio Revised Code § 2307.382, and Ohio Rule of Civil Procedure 4.3 confer personal jurisdiction and permit service of process outside the State of Ohio.[2] If the defendant is amenable to service of process under state law, the Court must then determine whether the exercise of personal jurisdiction over the defendant comports with the standards of federal due process, as delineated in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny. *See Goldstein v. Christiansen*, 70 Ohio St.3d 232, 235-37, 638 N.E.2d 541, 543-45 (Ohio 1994).

As the Supreme Court of Ohio has explained, "Ohio's long-arm statute is not co-terminous with due process." Therefore, even if the long-arm statute confers personal jurisdiction, the court cannot exercise jurisdiction if doing so would violate the defendant's due process rights. *Kauffman Racing Equip., LLC v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶45.

Pingeton argues that he is not amenable to service under Ohio's long-arm statute because he is not licensed to practice law in Ohio, has no office in Ohio, does not handle cases for clients in Ohio, and conducts no other business in Ohio.

_____

[2] Ohio Rule of Civil Procedure 4.3, governing out-of-state service of process, essentially mirrors the language of the long-arm statute.

6

He further argues that even if he were amenable to service under Ohio's long-arm statute, the assertion of personal jurisdiction over him would violate due process requirements. The Court disagrees on both accounts.

### 1. Ohio's Long-Arm Statute

Ohio's long-arm statute, set forth in Ohio Revised Code § 2307.382, establishes the specific conduct that may give rise to personal jurisdiction over a nonresident defendant. Guest alleges that this Court may exercise personal jurisdiction over Pingeton under § 2307.382(A)(3) or (A)(6). Those subsections read as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . :
>
> > (3) Causing tortious injury by an act or omission in this state . . . ; [or]
> >
> > (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

Ohio Rev. Code § 2307.382(A).

The Court may properly exercise personal jurisdiction over Pingeton under either of these subsections. As an initial matter, the Court notes that a violation of the FDCPA constitutes a "tortious injury" for purposes of the long-arm statute. *See Vlach v. Yaple*, 670 F. Supp.2d 644, 648 (N.D. Ohio 2009); *Vlasak v. Rapid Collection Sys., Inc.*, 962 F. Supp. 1096, 1100 (N.D. Ill. 1997) (holding that a

violation of the FDCPA "unquestionably constitutes a breach of a legal duty,"
making it analogous to the commission of a tortious act).

Guest first alleges that Pingeton caused tortious injury in this state by an act
or omission in this state when Pingeton hired a process server to serve a copy of
the foreclosure Complaint on Guest at his Ohio residence, thereby implicating
§ 2307.382(A)(3). Pingeton notes that the Complaint actually alleges that
Provident Funding, rather than Pingeton, hired the process server. Compl. ¶ 14.
In the Court's view, this is a distinction without a difference.

Pingeton instituted the second foreclosure action on behalf of his client,
Provident Funding. That lawsuit obviously could not proceed unless Guest was
served with a copy of the Complaint. Viewing the pleadings in the light most
favorable to the plaintiff, as required, it can reasonably be inferred that Pingeton
made the arrangements and hired the process server on behalf of his client.
Moreover, that process server acted as Pingeton's agent, undertaking work that
benefited Pingeton's business. It can reasonably be inferred that Pingeton dictated
who should be served, what should be served, and where it should be served. As
such, the agent's physical presence in Ohio is imputed to Pingeton for purposes of
§ 2307.382(A)(3).

Cases from other jurisdictions, involving claims for abuse of process and
malicious prosecution, are illustrative. For example, the Fourth Circuit has held
that "if an out-of-state defendant causes abusive process to be served upon an in-
state plaintiff, and the plaintiff subsequently sues the defendant in plaintiff's state,

8

the state wherein the alleged abusive process was served, on a cause of action arising out of such abusive service of process, personal jurisdiction exists over the out-of-state defendant." *Vishay Intertechnology, Inc. v. Delta Int'l Corp.*, 696 F.2d 1062, 1067 (4th Cir. 1982). *See also Hamilton, Miller, Hudson & Fayne Travel Corp. v. Hori*, 520 F. Supp. 67, 70 (E.D. Mich. 1981) (holding that, under agency principles, an appointed process server's physical presence in Michigan justified the assertion of personal jurisdiction over Illinois attorneys in a malicious prosecution action); *Balsly v. West Mich. Debt Collections, Inc.*, No. 3:11cv642-DJN, 2012 WL 628490, at *6 (E.D. Va. Feb. 27, 2012) ("the defendant is deemed to have been physically present in the forum vis-à-vis its agent – the process server.").

In each of these cases, where the alleged torts were "*effected* by service of process," *see Schleit v. Warren*, 693 F. Supp. 416, 419-22 (E.D. Va. 1988), the agent-process server's physical presence in forum state subjected the out-of-state attorneys to personal jurisdiction. Likewise, in this case, viewing the allegations in a light most favorable to Guest, the Court finds that Pingeton is subject to personal jurisdiction under § 2307.382(A)(3); Pingeton, through the process server who served Guest at his Dayton residence, caused tortious injury by an act in Ohio.

In the alternative, the Court could exercise personal jurisdiction under § 2307.382(A)(6), because Pingeton has allegedly caused "tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio courts take a "broad approach" to

9

application of § 2307.382(A)(6).  *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012).

Pingeton argues that § 2307.382(A)(6) does not apply because the Complaint does not specifically allege that he filed and maintained the second foreclosure action with the "purpose of injuring" Guest.  But again, the Court must construe the pleadings in the light most favorable to the plaintiff.  Guest allegedly filed affidavits in the first foreclosure action stating that he did not own the property in question, was not liable on the debt, and did not sign the Mortgage. Provident thereafter dismissed that action without prejudice.  Pingeton therefore knew or should have known of the disputed nature of the debt.  It could reasonably be inferred that, when he re-filed the foreclosure action against Guest just five months later and continued to litigate that action despite Guest's protests, he did so with the purpose of injuring Guest's financial well-being.  Moreover, by effecting service of process on Guest in Ohio, Pingeton might have reasonably expected such injury to occur in Ohio.  *See Vlach*, 670 F. Supp. 2d at 648 (holding that debt collector, who allegedly violated the FDCPA by sending letter addressed to an Ohio resident, should have reasonably expected the recipient to be injured in Ohio, making personal jurisdiction proper under § 2307.382(A)(6)).

For these reasons, the Court concludes that Pingeton is amenable to personal jurisdiction under Ohio's long-arm statute.

## 2.   Due Process

Having found that Pingeton is subject to personal jurisdiction under Ohio

Revised Code § 2307.382(A)(3) and § 2307.382(A)(6), the Court must next

determine whether the exercise of personal jurisdiction comports with due process

requirements.  A defendant must have enough "minimum contacts" with a state

such that the exercise of jurisdiction does not offend "traditional notions of fair

play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945).  The key question is whether it was foreseeable that the

"defendant's conduct and connection with the forum state are such that he should

reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297 (1980).

General jurisdiction exists when the defendant's contacts with the forum

state are "continuous and systematic," even if the cause of action does not arise

from those contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S.

408 (1984).  Guest does not contend that this Court has general jurisdiction over

Pingeton.

Rather, he relies on specific jurisdiction, which must arise from the

defendant's contacts with the forum state.  Specific jurisdiction exists if the

defendant's contacts with the forum state satisfy three criteria:

> First, the defendant must purposefully avail himself of the privilege of
> acting in the forum state or causing a consequence in the forum state.
> Second, the cause of action must arise from the defendant's activities
> there. Finally, the acts of the defendant or consequences caused by
> the defendant must have a substantial enough connection with the

11

forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### a. Purposeful Availment

Guest alleges that Pingeton purposely availed himself of "the privilege of acting in the forum state or causing a consequence" in Ohio, when he: (1) caused Guest to be served with the second foreclosure complaint; and (2) contacted Guest's attorney by telephone to discuss the foreclosure action. Pingeton argues that neither is sufficient to constitute "purposeful availment."

The Court agrees that Pingeton's one phone call to Guest's attorney in Ohio, concerning Guest's obligation on the Mortgage, need not be considered. As a general rule, telephone calls to Ohio are insufficient to establish purposeful availment. *See Reynolds v. Int'l Amateur Athletic Ass'n*, 23 F.3d 1110, 1119 (6th Cir. 1994). An exception exists when the *content* of the communication forms the basis of the tort claim. *See Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). That exception, however, is inapplicable in this case.

In contrast, by deliberately effecting service of process on Guest in the State of Ohio, Pingeton purposely availed himself of the privilege of causing a consequence in Ohio. Such service of process was a necessary corollary to the foreclosure action Pingeton filed on behalf of his client. Moreover, that lawsuit resulted in the claimed injury.

12

Under the circumstances presented here, it is enough that Pingeton, who knew that Guest was a resident of Ohio, hired a process server to take action in furtherance of the alleged torts. As the court held in *Schleit*, "[t]he court finds it reasonable to conclude that a lawyer who knowingly serves abusive process in a jurisdiction may expect to be haled into court where service was effectuated, since by such action he is purposely avail[ing] himself of the privilege of conducting activities within the forum State." 693 F. Supp. at 422-23 (internal quotation omitted). *See also Balsly*, 2012 WL 628490, at *5 ("hiring a process server, alone, can satisfy the 'minimum contacts' threshold."). The Court concludes that Pingeton purposely availed himself of the privilege of acting in Ohio or causing a consequence in Ohio.

### b. Cause of Action Arises from Activities in Ohio

The next question is whether Guest's causes of action arise from Pingeton's contacts with Ohio. Notably, this is a "lenient standard. . . [T]he cause of action need not 'formally' arise from the defendant's contacts" with the forum state. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007). It is enough if "the causes of actions were 'made possible by' or 'lie in the wake of' the defendant's contacts." *Id.* (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988)). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).

13

Here, many of the alleged FDCPA violations and the alleged intentional infliction of emotional distress arise, in part, from the second foreclosure action that was filed in Florida. That lawsuit could not proceed unless Guest was properly served with a copy of the complaint and summons. That, in turn, required the hiring of a process server to serve Guest in Ohio. In this respect, Pingeton's contacts with Ohio are related to the operative facts of the controversy. The causes of action therefore arise from Pingeton's activities in Ohio.

### c. Substantial Connection

The last question to be considered is whether Pingeton's acts or the consequences caused by him have a substantial enough connection with Ohio to make the exercise of jurisdiction over him reasonable. Where first two criteria are met, an inference of reasonableness arises, and "only the unusual case" will not satisfy the substantial connection requirement. *Theunissen,* 935 F.2d at 1461 (quoting *Am. Greetings*, 839 F.2d at 1170).

In determining "reasonableness," the Court must balance "the burden on defendant, the interests of forum state, and the plaintiff's interest in obtaining relief." The Court must also consider "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

In this case, none of these considerations overcomes the "inference of reasonableness." Pingeton may be burdened by having to litigate these claims in

14

Ohio, but Guest would suffer an equal, if not greater, burden, if forced to litigate in Massachusetts or Florida. Because Guest is Ohio resident whose injuries have been suffered in Ohio, Ohio has a great interest in providing him with a forum to resolve the dispute. Moreover, with the alleged damage to his credit score, Guest obviously has great interest in obtaining convenient and effective relief. No other state would appear to have more than a minimal interest in litigating Guest's alleged FDCPA claims or his claim of intentional infliction of emotional distress.

The Court finds that the consequences caused by Pingeton's acts have a substantial enough connection to Ohio to make the exercise of personal jurisdiction over him reasonable. It was reasonably foreseeable that by re-filing the foreclosure action in Florida and causing Guest to be served in Ohio, Pingeton would be haled into court here. *See, e.g., Vlach*, 670 F. Supp.2d at 649 (sending communications to Ohio in violation of the FDCPA creates "the sort of substantial connection to Ohio for which [defendant] should reasonably anticipate being haled into court.").

For the reasons set forth above, the Court concludes that Guest has satisfied his "relatively slight" burden of establishing a prima facie case of personal jurisdiction over Pingeton. Having determined that Pingeton is subject to personal jurisdiction under Ohio's long-arm statute, and that the exercise of jurisdiction over him comports with constitutional due process requirements, the Court therefore OVERRULES Pingeton's motion to dismiss for lack of personal jurisdiction.

15

### III. Intentional Infliction of Emotional Distress

Pingeton also argues that, even if the Court finds that personal jurisdiction exists, the Court should dismiss Guest's claim of intentional infliction of emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6) because Guest has failed to state a claim upon which relief may be granted.

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).

Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005) (citing *Scheuer v. Rhodes*, 4I6 U.S. 232, 236 (1974)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

16

The Rule 12(b)(6) analysis requires a court to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F. 3d at 476). However, legal conclusions couched as factual allegations need not be accepted as true. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by

17

factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id*. at 679.

### B. Analysis

In order to succeed on a claim for intentional infliction of emotional distress, a plaintiff must prove:

> (1) the defendant [either] intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Risch v. Friendly's Ice Cream Corp*., 136 Ohio App.3d 109, 115, 736 N.E.2d 30, 34 (Ohio Ct. App. 1999).

Guest alleges that Pingeton repeatedly engaged in abusive, deceptive, and unfair practices in his attempt to collect a debt that he knew or should have known was not Guest's debt, and that Pingeton recklessly or intentionally caused severe emotional distress to him. Compl. ¶¶58-59. Guest further alleges that Pingeton's conduct was extreme and outrageous so as to go beyond the bounds of decency, and that the mental anguish caused to Guest was serious and of a nature no reasonable person would be expected to endure. Guest maintains that, as a direct and proximate cause of Pingeton's conduct, Guest "has suffered significant frustration, embarrassment, stress, loss of sleep, upset stomach, and more." *Id.* at ¶¶ 60-62.

18

Pingeton argues that Guest's claim of intentional infliction of emotional distress ("IIED") fails because, as a matter of law, the conduct alleged is not "outrageous and extreme," "beyond all possible bounds of decency," or "utterly intolerable in a civilized community." In support, he cites to *Provident Bank v. Adriatic, Inc.*, 12th Dist. No. CA2004-12-108, 2005-Ohio-5774, at ¶ 25 (granting summary judgment on IIED claim based on filing of a foreclosure action), *Treadway v. Free Pentecostal Pater Avenue Church of God, Inc.*, 12th Dist. No. CA2007-05-139, 2008-Ohio-1663, at ¶ 37 (holding that claim relating solely to financial well-being cannot serve as basis for IIED claim), and *Coors v. Fifth Third Bank*, 1st Dist. No. C-050927, 2006-Ohio-4505, at ¶ 19 (holding that although the debt collection efforts in foreclosure action may have been questionable, the conduct alleged, "as a matter of law, did not constitute extreme and outrageous behavior").

Guest argues that the cases cited are inapposite because they involved attempts to collect a lawful debt. Indeed, legally sanctioned acts cannot give rise to a claim for IIED. *Scott v. Spearman*, 115 Ohio App.3d 52, 58, 684 N.E.2d 708, 712 (Ohio Ct. App. 1996); *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 915 N.E.2d 696, 2009-Ohio-2665, ¶49 ("[p]arties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform.").

In contrast, in this case, Guest alleges that Pingeton was attempting to collect a debt that he knew or should have known was not Guest's debt. The Court is unwilling to say that debt collection efforts can *never* be "extreme and

19

outrageous" or "beyond all possible bounds of decency" such that they can be considered as "utterly intolerable in a civilized community."

Nevertheless, "[t]he standard articulated by the Ohio Supreme Court stipulates that this cause of action is reserved for behavior of the most extreme sort." *Wells Fargo Bank, N.A. v. Favino*, No. 1:10CV571, 2011 WL 1256771, at *11 (N.D. Ohio March 31, 2011). In *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 453 N.E.2d 666 (Ohio 1983), abrogated on other grounds, *Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (Ohio 2007), the Ohio Supreme Court noted that "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 375, 453 N.E.2d at 671 (quoting Restatement of the Law 2d Torts (1965) 73, comment d to Section 46)). The Court is not convinced that the conduct alleged in this case rises to that level, particularly since the name "Johnny Guest" allegedly appeared on the Mortgage in question.

Even if Pingeton's conduct were "extreme and outrageous," Guest's claim is subject to dismissal for another reason. The Ohio Supreme Court has held that "serious emotional distress describes emotional injury which is both severe and debilitating." *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759, 765 (Ohio 1983). As a matter of law, Guest's allegations of frustration, embarrassment, stress, loss of sleep and an upset stomach do not constitute the type of "severe

20

and debilitating" emotional injuries necessary to support a claim of IIED. *See Favino*, 2011 WL 1256771, at *11 (holding that threadbare allegations of "aggravation, frustration, sleepless nights and worry, embarrassment" did not state a claim for relief). Notably, Guest does not allege that he sought medical or psychiatric help or that he was unable to function in daily life.

For these reasons, the Court DISMISSES Count 3 of Guest's Complaint, the IIED claim, WITH PREJUDICE.[1]


IV.     **Conclusion**

For the reasons stated above, the Court SUSTAINS IN PART and OVERRULES IN PART Defendant Matthew Pingeton's Motion to Dismiss. Doc. # 18. Although the Court finds that it has personal jurisdiction over him, the Court concludes that, with respect to Count 3 of the Complaint – Plaintiff's claim for intentional infliction of emotional distress – Plaintiff has failed to state a claim upon which relief may be granted. The Court therefore DISMISSES Count 3 WITH PREJUDICE.

---

[1] The Court's dismissal of the IIED claim does not necessarily foreclose recovery for damages for emotional distress under the FDCPA, which has a more lenient standard. *See Davis v. Creditors Interchange Receivable Management, LLC*, 585 F. Supp.2d 968, 973 (N.D. Ohio 2008) (holding that the FDCPA does not require a plaintiff to satisfy the elements of a state law claim of IIED in order to recover actual damages for emotional distress under the FDCPA).

Date: March 13, 2013

_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE